Sharon J. FOSTER, Plaintiff-Respondent,

v.

Monte D. FOSTER, Defendant-Appellant.

No. KCD27818.

Missouri Court of Appeals, Kansas City District.

June 1, 1976.

**834**

Francis L. Roach, Dean F. Arnold, B. W. Jacob, Kansas City, for defendant-appellant; Bagby, Benjamin & Arnold, Kansas City, of counsel.

Robert B. Zeldin, Legal Aid & Defender Society of Kansas City, Independence, for plaintiff-respondent.

Before Shangler, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The decree of divorce awarded custody of the three teenage children to the mother and provided $80 per week for their support. At that time, the father was a truck driver and earned a gross income of $254 per week. About thirteen months later, the freight business slackened and he lost employment. The father brought his motion to modify the judgment of support based upon this change of circumstance. The trial court denied modification and the father appeals.

The evidence was that the divorce was granted on December 31, 1973. The gross income of the appellant father during that year was almost $11,000 as a part-time employee. He was given full employment status in early 1974 and was increased to $254 per week, his earnings at the time of the original custody order. He lost that employment in November of 1974 and in late January of 1975, the motion to modify was heard.

At the time of the hearing, the father was without funds other than the $67 unemployment compensation remittance which he had received for the past ten weeks and which was due to expire after an additional twelve weeks. He disbursed $19 per week from those funds for payment of hospitalization insurance for the children and another $20 per week to his mother with whom he lived. He was indebted on numerous accounts for purchases made for himself and the children, on a loan incurred to pay the attorney fee for his former wife, money borrowed from his mother, the debt on his car, and in all was $4,000 in arrears.

The appellant was placed on the extraboard at his employment, subject to recall on the basis of seniority, with little expectation of work resumption before the summer of 1975. He testified to his various aptitudes and experience for employment, including precision grinding, sales work, freight dock work and the like. He had made some attempts at re-employment with other truck lines, searched the want ads, consulted the State Division of Employment Security but did not seek the services of private employment agencies.

The respondent mother had remarried. At the time of the decree of the divorce she

gained title to their residence and appellant had no obligation for the house payments. She had to give up her employment recently on the advice of her physician due to complications of pregnancy. At the time of hearing neither she nor the children had income. Application for ADC had been made but had not yet materialized. She had a mortgage obligation of $113.90 per month on the home and payment of $207 per month for a food plan. It was also shown that of the $4560 support installments which had matured to judgment since entry of the original decree, $2177.82 remained unpaid at the time of the hearing on the motion to modify. The appellant offered no explanation for this arrearage.

■ The appellant contends that the refusal of the court to reduce the support payments, in view of his condition of hopeless indebtedness brought on involuntarily by the loss of employment, was simply against the logic and effect of the facts [citing *Adkins v. Adkins*, 325 S.W.2d 364, 367[5, 6] (Mo.App.1959)] and was an abuse of discretion.

There can be no doubt that at the time of the modification hearing the appellant was without actual means, other than the $67 weekly unemployment compensation remittance. It is to be doubted, however, that his condition of indebtedness was involuntary, as the more than $2000 payable to the wife during this period of employment was neither remitted in obedience to the court order nor, apparently, used by the appellant to reduce his own private obligations. The accumulation of indebtedness appears to be the fruit of his own improvidence. Nor does it escape notice that during the period of unemployment, although according to his own account, there was available from each compensation check $25 above the money required for his own immediate needs, the appellant never offered any sum for the children, however modest.

■ The appellant cites authorities [*Mortensen v. Mortensen*, 469 S.W.2d 852 (Mo. App.1971); *Rodgers v. Rodgers*, 505 S.W.2d 138 (Mo.App.1974) and *C.E.McM. v. A.V. McM.*, 506 S.W.2d 14 (Mo.App.1974)] on the proposition that an award for child support should not be so great as to destroy the incentive of the father or impair his position, and in this determination his indebtedness is a proper consideration. The question of the aptness of the child support award originally entered is not before us, however, but only the refusal of the court to modify that judgment. On that issue, the movant has the burden to prove change of circumstances both substantial and continuing. § 452.370(1), RSMo Supp.1976.[1]

It may be conceded that the appellant proved a substantial change of circumstance; the evidence fails, however, to prove that the change was also continuing. It shows only that the appellant would remain unemployed until he was either recalled or found new work. While his recall to employment was undoubtedly beyond his control the evidence raises a serious doubt as to his good faith in seeking new employment. Although he acknowledged a wide variety of job experience, his actual applications were directed to trucking concerns. He was confronted on cross-examination with the want-ad section of a current Kansas City Star, marked for positions for which appellant had described an aptitude. The appellant was asked to cross out any job he felt was not suitable; all were eliminated for one reason or another. [He had earlier responded to the Court that he would accept any kind of employment in order to support his children.] His lack of initiative in the face of his own wants and the needs of the children suggests both a lack of interest in employment and a pretense as to his personal circumstance. The inaction of the appellant, otherwise physically fit and talented for varieties of work, could reasonably have been understood by

1. . . . [T]he provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.

the trial court as a voluntary refusal to use his capacity to earn and pay. See, *Weiss v. Weiss,* 392 S.W.2d 646, 647[1, 2] (Mo.App. 1965).

The authorities agree that a court may, in proper circumstances, impute an income to a husband according to what he could have earned by the use of his best efforts to gain employment suitable to his capabilities. 18 A.L.R.2d 1, Annotation: Modification of Alimony Decree, § 15. Those courts which have considered the question also agree that "unemployment of the husband is a common ground for a modification application, and modification or reduction should be granted in such cases unless the court can see the lack of employment is from choice rather than from necessity or the condition of the times." Nelson on Divorce, § 17.15, p. 87 (1961); *Commonwealth v. Naselsky,* 199 Pa.Super. 270, 184 A.2d 288 (1962); *Lambert v. Lambert,* 66 Wash.2d 503, 403 P.2d 664 (Wash.1965); *Towles v. Towles,* 243 Miss. 59, 137 So.2d 182 (1962).

The order of the trial court which denied modification of the support decree meets the requirements of Rule 73.01. Accordingly, that judgment is affirmed.

All concur.